CARAWAY, J.,
concurring.
LThe UM statute in question, La. R.S. 22:1295(6), provides certain presumptions of proof that the operator of the vehicle is uninsured or underinsured. The negligent operator of a vehicle may fail to respond to a Department of Public Safety inquiry regarding his insurance or may simply be a nonresident or a person whose residency and address is unknown. The operator is then deemed uninsured. Importantly, the statute does not require actual proof of the operator’s insurance status. Of course, direct proof of that status by the operator’s own testimony, apart from the statute’s presumptions, is always admissible in affidavit form or otherwise. In this case, the technicalities of the statute were given in the jury charge, when the evidence introduced at trial, in my opinion, already contained Mowbray’s admission of his insurance status as a party in the action.
Mowbray was a party to the action when he identified in his discovery response that “each and every policy of insurance” providing him coverage was limited to just one policy, the Allstate policy. On January 27, 2014, days in advance of trial, Mowbray filed his pretrial statement to the court admitting that insurance coverage was not an issue for trial. Simultaneously, while Mowbray’s admission of his one policy remained within the discovery record, Farm Bureau executed its pretrial statement on January 24, 2014, confirming that Mowbray “is insured by Allstate” and coverage is not at issue. Farm Bureau’s pretrial statement and Mowbray’s admission as a party to the suit were received iii evidence by the trial court and presented *748 to the jury. From that evidence, the jury’s answer to jury |2interrogatory number 1 is contrary to the evidence presented. Being directed to understand the technicalities of the UM proof statute, the jury’s confusion over the effect of Mow-bray’s discovery admission and Farm Bureau’s pleadings admission is nevertheless understandable.
Since I agree with plaintiffs assignment of error, I have reviewed the record in its entirety concerning the question of the amount of plaintiffs damages in excess of the $100,000 Allstate policy limit. From that review, I find plaintiffs medical evidence lacking.
Special damages proven were listed at $43,140.65 in medical charges. Pain and suffering relief was therefore a part of the initial $100,000 in coverage. The main issue concerned plaintiffs need for additional surgery which would push the total damages beyond $100,000. On that issue, Dr. Louis Blanda, Luquette’s orthopedic surgeon, testified that surgery in Lu-quette’s case was “not mandatory,” “speculative,” and “up to [Luquette.]” When asked if Luquette’s need for neck and back surgery was more probable than not, Blan-da testified that it depended “on how you look at it. It’s not mandatory.” Dr. Blan-da stated that only 25-30%- of people with Luquette’s issues underwent surgery and that most “try to live with it.” Luquette’s treating physician, Dr. Ronald Jenkins, stated only that he would support Lu-quette’s decision to have surgery, but did not know “if surgery will help him.”
I respectfully concur in the affirmance of the trial court’s judgment.